**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROBERT SCHANNE, | : | |
|    Plaintiff, | : | |
| | : | CIVIL ACTION |
|         v. | : | |
| | : | NO. 11-1851 |
| JENNA ADDIS, | : | |
|    Defendant. | : | |

September 27, 2012                                                                      Anita B. Brody, J.

**MEMORANDUM**

Plaintiff Robert Schanne brings suit against Defendant Jenna Addis for defamation under Pennsylvania state law.[1] I exercise federal diversity jurisdiction over Schanne's claim pursuant to 28 U.S.C. § 1332(a)(1). Addis moves for summary judgment.[2] For the reasons set forth below, I will grant Addis' motion.

**I.  BACKGROUND**

Plaintiff Robert Schanne, a resident of Pennsylvania, was a physics teacher at Lower Merion High School ("Lower Merion") in Ardmore, Pennsylvania. He was hired in September 1997 and officially terminated on January 24, 2011. Defendant Jenna Addis was a student at Lower Merion from 1999 until she graduated in 2003. Thereafter she attended Tulane University in New Orleans, Louisiana, where she continues to reside. During her junior and senior years of high school, Addis was a student in Schanne's physics and advancement

---

[1] On December 19, 2011 Schanne filed a separate suit against Lower Merion School District and District officials. *Schanne v. Lower Merion Sch. Dist., et. al.,* Case No. 11-cv-7707. In that case he brings claims for civil rights violations under 42 U.S.C. §§ 1983, 1985 stemming from his involuntary termination. Am. Compl. ¶¶ 43-44. On September 19, 2012 I ordered that the two cases be designated as related under *Local Rule 40.1(b)(3)(A)*.
[2] For purposes of summary judgment, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (alteration in original) (internal quotation marks omitted).

1

placement physics classes.  She sometimes ate lunch with Schanne in the closet space between classrooms.  Schanne also tutored Addis at her home and served as her senior project advisor.

The record is mixed as to the evolution and timeline of the physical relationship between Schanne and Addis.  According to Addis, their romantic relationship began during her senior year of high school, escalating from hugging and kissing to inappropriate touching and oral sex.  Pl.'s Resp. Ex. D at 2.  She explains that the physical contact began when Schanne was tutoring her at her home during the fall of her senior year and that they were dating by the spring.  *Id.* at 2.  She states that they did not begin having intercourse until after she graduated.  *Id.* at 5.  According to Schanne, the sexual relationship did not begin until after Addis' graduation.  Pl.'s Compl. 1 ¶ 2.  They dated during the summer after she graduated.  After she went to college they were no longer a couple but they would have intercourse when she saw him over breaks.  Pl.'s Resp. Ex. D at 3.

In November 2010, Addis was home in Pennsylvania visiting for Thanksgiving weekend.  That Friday, she called Schanne to see if he wanted to get together.  During the call, Schanne told Addis that he was living with his girlfriend in a home they purchased together.  Pl.'s Resp. Ex. B 102:6-12.  The following Monday, November 29, 2010, Schanne and Addis met for coffee at a bookstore.  Addis told Schanne that she was struggling with their past relationship and that it was affecting her ability to have a meaningful relationship.  Def. Ex. A 31:21-22; Pl.'s Resp. Ex. B 103:4-12. Later that day, Addis visited her neighbor, Susan O'Bannon, who is also a Lower Merion teacher.  O'Bannon had taught Addis biology in the ninth grade and Addis had babysat for O'Bannon's children in the past.  *Id.* at 9:11-13.  During the visit, Addis told O'Bannon about the relationship that she had with Schanne while she was a student at Lower Merion.

The next day, O'Bannon reported the conversation to Lower Merion Principal Sean Hughes.  Def. Ex. A 17:22.  O'Bannon initially thought Addis was confiding in her as a friend, but the next day thought Addis might have reported the relationship to her as a school official.  *Id.* at 23: 12-22.  Though O'Bannon was unsure, she felt it was her professional obligation, as a school employee, to report the allegation.  *Id.* at 29:6-13.  Addis stated that she did not know that O'Bannon was going to report the information.  Pl.'s Resp. Ex. B 90:18-20.

On December 3, 2010, Principal Hughes called Addis.  Pl.'s Resp. Ex. B 38:15.  Six days later, Hughes and Lower Merion's Human Resources Director Martha Yoder called Addis.  Pl.'s Resp. Ex. D.  Addis told them about the sexual relationship she had with Schanne during and after high school.  *Id.* at 1.  On December 13, Hughes and Yoder called Addis again.  Over the course of these two conversations Hughes and Yoder took notes and sent them to Addis.  Addis reviewed the notes, made changes and on December 14 sent them back.  These notes represent Addis' official statement.  *See* P.'s Resp. Ex. D.

On December 15, 2010, the school district administration summoned Schanne for a pre-termination *Loudermill* hearing.  *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) (providing for a mandatory pre-termination hearing for public employees with a constitutionally protected interest in their jobs).  The next day the hearing was conducted by Hughes and Yoder.  Pl.'s Resp. Ex. A 41:4.  Schanne was suspended on December 16, 2011.  Pl.'s Resp. Ex. C 7.  Schanne refused to attend a follow-up hearing on January 18, 2011.  *Id.* 51:18-21.  On January 24, 2011, the School Board officially terminated his employment.  Pl.'s Resp. Ex. C 7.  On March 15, 2011 Schanne filed the instant defamation suit against Addis.  In addition, Schanne filed a grievance against Lower Merion.  *See* Def. Status Update and Attached Arbitration Award, *Schanne v. Lower Merion Sch. Dist., et. al.* Case No. 11-cv-7707 (ECF No. 20).  On

December 2, 2011 and April 23, 2012 arbitration hearings took place. On July 27, 2012 the Arbitrator issued her decision, denying Schanne's grievance and finding that the school district proved just cause for his discharge. *Id.* at 26.

## II. LEGAL STANDARD

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party must then "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. However, the nonmoving party may not "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claims. *Fireman's Ins. Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

In essence, the inquiry at summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## III. DISCUSSION

Schanne originally asserted that Addis made three defamatory communications: during her November 29, 2010 conversation with O'Bannon, and her December 9 and December 13,

4

2010 two phone calls with Hughes and Yoder.  Pl.'s Opp'n 5.  Addis moves for summary judgment on the grounds that these statements are absolutely privileged and therefore she cannot be sued for defamation.  She argues that the absolute privilege attaches because her communications were pertinent to a quasi-judicial proceeding—Schanne's *Loudermill* hearing conducted on December 16, 2010.

Pennsylvania has adopted section 587 of the Restatement (Second) of Torts that gives parties in litigation an absolute privilege with regard to statements that relate to a judicial proceeding if the communications are preliminary to, instituting, or part of the proceeding. *Pawlowski v. Smorto*, 588 A.2d 36, 42 (Pa. Super. Ct. 1991) (citing Restatement (Second) Torts § 587 (2012)).  A parallel rule exists for witnesses, providing that "a witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as a part of a judicial proceeding in which he [or she] is testifying, if it has some relation to the proceeding."  Restatement (Second) Torts § 588 (2012). Because the final judgment of the tribunal is based on witness testimony, "it is necessary [] that a full disclosure not be hampered by fear of private suits for defamation."  Restatement (Second) Torts § 588 cmt. (b) (2012).  The Pennsylvania Supreme Court has ruled that "[a]ll communications pertinent to any stage of a judicial proceeding are accorded an absolute privilege which cannot be destroyed by abuse." *Binder v. Triangle Publ'ns, Inc.*, 275 A.2d 53, 56 (Pa. 1971).  The absolute privilege applies regardless of the motive of the publisher. *Pawlowski*, 588 A.2d at 41.

Whether a statement deserves an absolute privilege is a question of law for the court. *Pawlowski*, 588 A.2d at 41.  The Pennsylvania Supreme Court's general rule is that statements "issued in the regular course of judicial proceedings and which are pertinent and material to the

5

redress or relief sought" are privileged.  *Post v. Mendel*, 507 A.2d 351, 355 (Pa. 1986).  Any doubt as to whether a statement is "pertinent and material to the redress or relief sought" "is to be resolved in favor of pertinency and materiality." *Pawlowski*, 588 A.2d at 41.

Pennsylvania also applies the absolute privilege to quasi-judicial proceedings.  *Milliner v. Enck,* 709 A.2d 417, 419 n.1 (Pa. Super. Ct. 1998).  This includes hearings before tribunals that perform judicial functions, such as proceedings by administrative officers, boards, and commissions.  *Id.*  Schanne agrees that the *Loudermill* hearing constituted a quasi-judicial proceeding.  Pl.'s Opp'n 3 n.1.  At oral argument, the attorney for Schanne conceded that the statements Addis made to Hughes and Yoder on the phone were pertinent to the quasi-judicial proceeding and therefore entitled to an absolute privilege.  The outstanding question is whether under the rule in *Post v. Mendel,* Addis' initial November 29, 2010 statement to O'Bannon when Addis confided in O'Bannon about her sexual relationship with Schanne was "issued in the regular course of judicial proceedings" and was "pertinent and material" to the *Loudermill* hearing.

Schanne does not dispute that the subject matter of Addis' statement is "pertinent and material" to the *Loudermill* hearing conducted by school authorities.[3]  Rather, he reads the requirement "in the regular course of judicial proceedings" very literally, arguing that because Addis made her statement before the quasi-judicial proceeding began, it was not made "in the context of regular judicial (or quasi-judicial) proceedings." Pl.'s Opp'n 3.  This interpretation dramatically curtails the privilege and limits it to statements made during the course of formal proceedings.

---

[3] The Pennsylvania Supreme Court has rejected the privilege for "extrajudicial communications," such as a letter complaining about the behavior of opposing counsel to a Disciplinary Board, or sending a copy of a recently-filed complaint to the media.  *Post v. Mendel*, 507 A.2d at 356; *Bochetto v. Gibson*, 860 A.2d 67, 73 (Pa. 2004).  Because Addis' statement formed the basis of the entire investigation and quasi-judicial hearing to follow it, by definition it is pertinent and material to the proceeding.

Yet this narrow reading belies the court's willingness to extend the absolute privilege to statements made prior to proceedings. The Supreme Court of Pennsylvania noted that to qualify as privileged, a communication "must bear a certain relationship to the proceeding," whether it is "published prior to, or during, a judicial proceeding." *Post v. Mendel*, 507 A.2d at 356. The privilege extends to pleadings, less formal communications such as preliminary conferences, correspondence between attorneys to further their clients' interests, and to statements made by people reporting problems to officials that trigger commencement of judicial or quasi-judicial proceedings. *Marino v. Fava*, 915 A.2d 121, 124 (Pa. Super. Ct. 2006) (applying the absolute privilege to statements an uncle made to mental health officials about his nephew because they initiated involuntary commitment proceedings); *Pawlowski,* 588 A.2d at 40-42 (applying an absolute privilege to a report made by several attorneys to the District Attorney and State Police that another attorney committed perjury because the statement aligns with the policy reasons for the privilege: to "ensure[] free and uninhibited access to the judicial system."); Restatement (Second) of Torts § 598 cmt. (e) (2012) (stating that "[f]ormal or informal complaints to a prosecuting attorney or other law enforcement officer concerning violations of the criminal law are absolutely privileged under the rule stated in § 587.").[4]

Just as the privileged statements in *Pawlowski* and *Marino* lead to the initiation of later judicial or quasi-judicial proceedings, Addis' statement served as the catalyst for Schanne's *Loudermill* hearing. While Pennsylvania courts have not specifically addressed whether students

---

[4] Preliminary communications receive protection as long as they are linked to a later judicial proceeding. Comment (e) to section 588 of the Restatement (Second) of Torts states,
> As to communications preliminary to a proposed judicial proceeding, the rule stated in this Section applies only when the communication has some relation to a proceeding that is actually contemplated in good faith and under serious consideration by the witness or a possible party to the proceeding. The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered.

Restatement (Second) Torts § 588 cmt. (e) (2012). Thus allegations that the school district seriously considered, investigated, and initiated a proceeding over are protected. Had the allegation failed to produce such a reaction and no proceeding ever took place, its status as a privileged communication would be more problematic.

who bring allegations against their teachers are granted an absolute privilege, Indiana, Maryland, California, and New York have applied an absolute privilege when student allegations against teachers lead to quasi-judicial proceedings. *See Hartman v. Keri*, 883 N.E.2d 774 (Ind. 2008); *Reichardt v. Flynn*, 823 A.2d 566 (Md. 2003); *Brody v. Montalbano*, 151 Cal. Rptr. 206 (Cal. Ct. App. 1978); *Weissman v. Mogol*, 462 N.Y.S.2d 383 (N.Y. Sup. Ct.1983). Had Addis not told her former teacher, who had a professional responsibility to report inappropriate teacher-student relationships, the investigation and hearing would not have commenced.[5]

Courts must also consider whether applying an absolute privilege in a given case would promote the privilege's purpose. The purpose of the privilege is "to afford [parties] freedom of access to the courts," to "encourage [witnesses'] complete and unintimidated testimony in court," and "to enable [counsel] to best represent his client's interests." *Binder*, 275 A.2d at 56. If not for this privilege, "a realm of communication essential to the exploration of legal claims [] would be hindered . . . ." *Post v. Mendel*, 507 A.2d at 355. In this case, protecting Addis' statement furthers the purpose of the privilege.

At oral argument, Schanne focused on the fact that in her deposition, Addis stated that she went to O'Bannon as a close friend rather than an agent of the school, that she never intended to go to the school with a complaint, and that she did not know that O'Bannon would be obligated to talk to school officials based on what she said. Pl.'s Resp. Ex. B, Addis Dep. 141:15-17, 20-22; 137:22-23. Schanne argues that this undercuts the purpose of the privilege. Intent, however, is not an enumerated requirement for an absolute privilege. Moreover, the motive of the speaker (be it malicious or not) is entirely irrelevant for absolutely privileged statements. *Pawlowski*, 588 A.2d at 41.

---

[5] The *Loudermill* hearing resulted in Schanne's termination from employment at the school.

When courts choose to apply the privilege, they deem the policy concerns—encouraging open communication without fear of retributive lawsuits—to outweigh the right of the defamation plaintiff to seek redress. *Pawlowski*, 588 A.2d at 42; *Marino v. Fava*, 915 A.2d at 124. In this case there are strong policy reasons that justify the application of an absolute privilege to Addis' statement. Statistics compiled by the Department of Education reveal that only 11.6 percent of students who had been harassed by a school employee reported the incident to a teacher, while 10.6 percent told other employees. U.S. Dep't of Educ., Office of the Under Sec'y, *Educator Sexual Misconduct: A Synthesis of Existing Literature* 35 (2004), *available at* http://www2.ed.gov/rschstat/research/pubs/misconductreview/report.pdf [hereinafter DOE Report]. Some studies estimate that only around 6 percent of all children report sexual abuse by an adult to someone who can do something about it. *Id.* at 34.

Another barrier to reporting teacher-student sexual relationships is the emotional confusion that accompanies the breakdown of the traditional teacher-student relationship. The teacher-student relationship is characterized by the teacher wielding authority and custody over the students. *Chancellor v. Pottsgrove Sch. Dist.*, 501 F.Supp.2d 695, 706 (E.D.Pa., 2007). Because of this dynamic, students do not have the legal capacity to consent to the sexual advances of their teachers. *Id.* Addis displayed such conflicting emotions in reporting her relationship. Addis stated that when she first talked to O'Bannon Addis did not intend to report the relationship. Then, when explaining to the principal why she had deleted most of the e-mails that she had received from Schanne, she explained, "It was causing me too much pain and I didn't know if I was ever coming forward." Pl.'s Resp. Ex. B, Addis Dep.141: 12-14. Yet once the investigation began, she wrote in an e-mail to Ms. O'Bannon that assisting the school in the investigation was important, and that "[s]omeone else could be at risk if [Schanne] is not

removed." *Id.* at 145:9-19. In Addis' official statement she explained that she was coming forward now because she did not want her experience to "happen again to anyone else." Pl.'s Resp. Ex. D at 4. She believed that she was unable to have a healthy relationship throughout college "because of the emotional and physical involvement," with Schanne, describing him as her "first," and admitting that "there is still a 'very strong attachment' and that 'she feels strongly about him.'" *Id.* at 5. She explained, "[P]art of me doesn't want to see him hurt, but he needs to be held accountable." *Id.*

Given the low rates of reporting and the emotional confusion that may accompany student-teacher sexual relationships, reports of such behavior must be protected and encouraged. The DOE report, *supra*, identified five different ways that school officials learn of educator sexual misconduct: formal complaints, informal complaints, observed abuse, observed suspicious behaviors, or rumors and/or anonymous reports. DOE Report at 34. It is logical that Addis confided in a teacher with whom she considered a friend. That she was willing to come forward to an employee of the school, even without an explicit intent to report the relationship, deserves protection. She should not be punished simply because she had a friendly relationship with O'Bannon, or because she had conflicting emotions about reporting. Likewise no teacher should fear that by relaying a student's report to the appropriate authorities, the student could be exposed to a defamation suit. Nor should these protections lapse once students graduate. Because victims may only come forward years later, they too must be protected and their reports encouraged.

In this case the importance of encouraging current and former students to come forward outweighs the potential for a wrongly accused teacher to suffer from a defamatory accusation. As with other wrongful accusations, false testimony under oath exposes the proponent to a

prosecution for perjury or false statement. *See Binder*, 275 A.2d at 56 (noting that "the privilege exists because the courts have other internal sanctions against defamatory statements, such as perjury or contempt proceedings."). In this case, Addis' statement triggered a quasi-judicial proceeding in which she testified. She is therefore liable for any false statement she made under oath. Furthermore, Schanne had an opportunity to be heard at his *Loudermill* hearing and arbitration.

**IV.   CONCLUSION**

Because Addis is entitled to an absolute privilege, I will grant Addis' motion for summary judgment.

\_\_\_/s/ Anita B. Brody_____

ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:          Copies **MAILED** on _____ to: